NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-1225                                              Appeals Court

HALAWI INVESTMENT TRUST, S.A.L.  vs.  JAMES T. BACON & others.[1,2]


No. 22-P-1225.

Suffolk.     January 3, 2024. - July 25, 2024.

Present:  Green, C.J., Walsh, & Smyth, JJ.


Attorney at Law, Malpractice.  Evidence, Legal malpractice,
     Opinion.  Practice, Civil, Summary judgment.



     Civil action commenced in the Superior Court Department on
August 31, 2017.

     The case was heard by Katie Rayburn, J., on motions for
summary judgment.


     Neil D. Goldman, of Virginia, for the plaintiff.
     Christopher C. Storm for James T. Bacon & another.
     George C. Rockas for Carlo Cellai & another.


_____

     [1] Allred, Bacon, Halfhill & Young, P.C.; Carlo Cellai; and
Cellai Law Offices, P.C.

     [2] Boston Merchant Financial, Ltd. (a United Kingdom company)
and Boston Merchant Financial, Ltd. (a Russian company),
successor-in-interest to Boston Merchant Financial, Ltd. (a
British Virgin Islands company), interveners.

WALSH, J.   This is an action for legal malpractice.
Plaintiff Halawi Investment Trust, S.A.L. (HIT), a Lebanese
joint stock organization, hired the defendants, Attorney James
T. Bacon, Attorney Carlo Cellai, and their respective law firms
(collectively, the defendants), to recover approximately $1.2
million in funds held by Boston Merchant Financial, Ltd. (Boston
Merchant).[3]  After Boston Merchant refused to return the funds,
the defendants initiated arbitration proceedings, which were
later dismissed because they were not timely filed.

HIT then filed this legal malpractice action in the
Superior Court, claiming that the defendants were negligent in
failing to timely initiate arbitration proceedings.  A judge
allowed the defendants' motion for summary judgment as to
certain of the claims, based on the conclusion that the
plaintiff had failed to establish that Boston Merchant would
have been able to satisfy a judgment for damages in any amount,
and the plaintiff appealed from a separate and final judgment of
dismissal of those claims entered pursuant to Mass. R. Civ. P.

---

[3] Although separate entities, we treat Boston Merchant
Financial, Ltd., a British Virgin Islands company, and Boston
Merchant Financial, Ltd., a United Kingdom company, as one and
the same for the purposes of this appeal as any distinctions
between them are irrelevant to our analysis.

54 (b), 365 Mass. 820 (1974).[4] The narrow issue on appeal is whether the evidence relating to collectibility was admissible and, if so, whether it was sufficient to survive a motion for summary judgment. Answering both questions in the affirmative, we reverse the entry of summary judgment.

Background. The facts, viewed in the light most favorable to the nonmoving party, HIT, are as follows. HIT is a joint stock corporation and Mahmoud Halawi is the sole or majority owner. In October 2010, HIT entered into an "Introducing Broker Agreement" (2010 Agreement) with Boston Merchant in which HIT would invest money on behalf of their investors with Boston Merchant, who would then enter into foreign trading, contracts for difference on equities, and other sophisticated financial transactions. The 2010 Agreement was signed by Paul Belogour,[5] the director of Boston Merchant, and Mahmoud Halawi, the chairman of HIT. It outlined the responsibilities of the respective parties and provided a broker fee schedule establishing HIT's compensation for successful referrals. Notably, the 2010 Agreement required mandatory arbitration of disputes between the parties and required that arbitration be

---

[4] Certain other counterclaims and cross claims remain pending in the underlying action.

[5] We note that the record identifies Paul Belogour also as Pavel Belogour. For our purposes, we will refer to him as Paul Belogour.

filed within one year after the facts giving rise to the arbitration dispute.  In 2012, a second agreement was executed between HIT and Boston Merchant (2012 Agreement).  The 2012 Agreement did not change the one-year requirement for arbitration of disputes.

In 2013, the Department of the Treasury identified Halawi Exchange Co. (Halawi Exchange), a financial institution operating outside of the United States, as an entity involved in laundering profits from drug trafficking for a Hizballah leader and narcotics trafficker.  The Treasury report noted that Halawi Exchange, as well as several other related entities, were organized under a holding company known as Halawi Holding S.A.L., based in Lebanon.  Mahmoud Halawi, as we noted earlier, is the sole or majority owner and senior manager of Halawi Exchange, Halawi Holding S.A.L., and HIT.  The Department of the Treasury concluded that "Halawi Exchange, its subsidiaries, and their respective management, ownership, and key employees are engaged in illicit financial activity."  Members of the Drug Enforcement Administration (DEA) and the Federal Bureau of Investigation (FBI) had also visited Boston Merchant's office manager; they were seeking information about possible money laundering by HIT.  After the visit from the DEA and FBI, and upon learning of the Treasury report, Boston Merchant froze

HIT's account and refused to return approximately $1.2 million in deposited funds.

The defendants were hired to recover the funds; they made demand on Boston Merchant for return of the HIT funds, sought relief in the Massachusetts and Federal courts, and ultimately filed arbitration proceedings in 2014. After the arbitration proceedings were dismissed as untimely, HIT filed suit against the defendants alleging legal malpractice.

The defendants moved for summary judgment arguing that HIT was unable to prove an essential element of their legal malpractice case: collectibility. In essence, the defendants argued that even if HIT could prove negligence and causation, HIT had not provided sufficient admissible evidence that assets could have been collected from Boston Merchant had the defendants received a favorable decision for HIT from the arbitrator.

The only evidence of collectibility was the deposition testimony of Paul Belogour, who was designated under Mass. R. Civ. P. 30 (b) (6), as appearing in 489 Mass. 1401 (2022), to testify about Boston Merchant's financial condition and ability to pay a potential judgment against it.[6]

---

[6] Despite numerous requests for production of documents and interrogatories, Belogour did not produce any records that independently established Boston Merchant's profits and losses

Viewed in the light most favorable to HIT, Belogour's testimony was as follows. In 2008, after working in various financial institutions as an accountant and later as a foreign exchange trader, Belogour founded Boston Merchant, a foreign exchange trading company. Despite the fact that Belogour was an owner and one of three managers during the relevant time period, he testified that he kept no financial records for the company and relied entirely on information provided to him by accountants, who were located in Russia. As to Boston Merchant's operations, Belogour acknowledged that in order to properly run Boston Merchant, he and his partners relied on information from others regarding the company's financial health. Belogour received information about Boston Merchant's finances during telephone calls with its accountants in Russia. Belogour testified that he could not recall the names of the accountants or the accounting firm, but, despite not remembering the name of the firm, he knew that it was no longer in business. He did not recall ever receiving any final closing documents from the accountants about Boston Merchant's financial health.

Belogour testified that he was unaware of Boston Merchant's assets during the relevant years, 2013 through 2016, and, when

---

and did not provide answers to interrogatories about its financial condition.

asked, could not recall its liabilities during that period. Belogour testified that Boston Merchant received balance sheets and profits and losses between 2013 and 2016 and that he received this information in the form of spreadsheets. Belogour did not retain a copy of the spreadsheets and was unaware of what occurred with this information. When asked if Boston Merchant kept a journal of its assets or liabilities or any electronic form of accounting, Belogour replied that he did not believe so.

Nonetheless, when asked specifically about the ability to pay a judgment, Belogour testified that in his opinion Boston Merchant would have been able to satisfy a potential judgment of $1.2 million.[7] When asked what he based this statement or opinion on, he responded, "Verbal, over the phone by the Russian accountants." Belogour was asked, "Was that question actually asked to the Russian accountants?" Belogour replied, "Yes," and stated that the numbers provided by the accountants led him to believe that the company had more than $1.2 million to pay a hypothetical judgment. Counsel for HIT pressed on, asking Belogour whether his understanding of Boston Merchant's ability to pay $1.2 million reflected "equity, as in assets, minus liabilities." Belogour responded, "Correct." Finally, the

---

[7] Specifically, he responded "yes" to the question with respect to December 31, 2013, and December 31, 2014.

following exchange occurred between counsel for Mr. Bacon and Belogour:

Q.: "Has your testimony about [Boston Merchant's] ability to pay a hypothetical 1.2-million judgment been based only upon oral information provided to you by [Boston Merchant's] accountant?"

A.: "That's correct."

Q.: "Nothing else?"

A.: "I don't recall."

Q.: "The only thing you recall that you base your testimony on today is oral conversations with [Boston Merchant's] accountant, correct?"

A.: "That's correct."

The judge ultimately allowed summary judgment based on her conclusion that Belogour's testimony about collectibility, based largely on information from unnamed Russian accountants, was inadmissible hearsay. The motion judge also found Belogour's testimony was not entitled to any consideration because he lacked personal knowledge about the assets and liabilities of Boston Merchant, did not have access to the financial records, and relied on the unnamed Russian accountants, whom he believed "managed pretty well the numbers for me."

Discussion. 1. Standard of review. Summary judgment is appropriate if the pleadings, discovery responses, and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).  "We review a grant of summary judgment de novo[,] . . . viewing the evidence in the light most favorable to the nonmoving party" (quotation and citation omitted).  Juliano v. Simpson, 461 Mass. 527, 529-530 (2012).  When the moving party does not bear the burden of proof at trial, the absence of a triable issue may be shown by the submission of evidence that negates an essential element of the plaintiff's case or by a showing that "the party opposing the motion has no reasonable expectation of proving an essential element of that party's case."  Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).  In ruling on a motion for summary judgment, "[t]he court is not to pass on the credibility of the witnesses or on the weight of the evidence."  Zaleskas v. Brigham and Women's Hosp., 97 Mass. App. Ct. 55, 61 (2020), quoting Attorney Gen. v. Brown, 400 Mass. 826, 832 (1987).

Under Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974), affidavits in support of or opposition to a motion for summary judgment shall be made on personal knowledge and "shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."[8]

---

[8] The rule also permits affidavits to be supplemented by depositions, answers to interrogatories, or further affidavits.

2.  Prima facie case of legal malpractice.  In a legal malpractice action, the plaintiff must establish that the attorney failed to exercise reasonable care and skill in handling the matter for which the attorney was retained, that the plaintiff suffered a loss, and that that attorney's negligence was the proximate cause of that loss.  See Fishman v. Brooks, 396 Mass. 643, 646-647 (1986).  Where the alleged "loss" is in the form of a lost judgment, the plaintiff need not prove that the entire judgment would have been recovered absent the lawyer's negligence; the plaintiff need only prove that he "'could have collected something' on the judgment."  Shimer v. Foley, Hoag & Eliot LLP, 59 Mass. App. Ct. 302, 311 (2003), quoting Jernigan v. Giard, 398 Mass. 721, 723 (1986).  The requirement of proof of collectibility is "derive[d] from the requirement that the plaintiff demonstrate that the attorney's negligence caused him a loss, 'that he probably would have obtained a better result had the attorney exercised adequate skill and care'" (citation omitted).  Shimer, supra.  See id. at 312-313 (plaintiff's proffer that he received payments from company for consulting services after alleged breach, his subsequent employment with competitor, and plaintiff's own market studies about company's revenues sufficient evidence of collectibility to defeat summary judgment motion).  See also Poly v. Moylan, 423 Mass. 141, 148 (1996), cert. denied, 519

U.S. 1114 (1997) (evidence of defendant's income insufficient to establish collectibility of judgment without assessment of debts).

To survive a motion for summary judgment, HIT must have produced evidence that it could have collected "something" from Boston Merchant. See Poly, 423 Mass. at 148. In other words, HIT was not required to show that Boston Merchant had the funds to pay the entire $1.2 million judgment, only that Boston Merchant could have paid some portion of it. We conclude that it did so.

Although we agree with the judge's analysis that, standing on its own, the testimony offered by Belogour, which in essence repeated information from an unnamed Russian accountant about the financial health of Boston Merchant, would be inadmissible hearsay,[9] we conclude that Belogour's testimony also included admissible lay opinion about Boston Merchant's financial condition at the relevant time, including his admissible opinion that Boston Merchant would have been able to pay a $1.2 million judgment. See Hlatky v. Steward Health Care Sys., LLC, 484

---

[9] The rule against hearsay prohibits the admission of out-of-court statements offered in evidence to prove the truth of the matter asserted in the statement, see Mass. G. Evid. § 801(c) (2023), unless the admission of the statement is allowed pursuant to "(a) case law, (b) a statute, or (c) a rule prescribed by the Supreme Judicial Court." Mass. G. Evid. § 802 (2023).

Mass. 566, 588 (2020) (Gants, C.J., concurring in part and dissenting in part); Winthrop Prods. Corp. v. Elroth Co., 331 Mass. 83, 85 (1954); McCormick v. Travelers Indem. Co., 22 Mass. App. Ct. 636, 637 (1986).  Under the principles set forth in Mass. G. Evid. § 701 (2023), a lay witness may provide opinion testimony so long as it is "(a) rationally based on the witness's perception; (b) helpful to a clear understanding of the witness's testimony or in determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of [Mass. G. Evid. § 702]."

Generally, a corporate officer or owner's testimony about the value of real property is admissible opinion testimony if that corporate officer has firsthand knowledge of the property. See generally Blais-Porter, Inc. v. Simboli, 402 Mass. 269, 273 (1988).  This type of testimony is admissible not because of the witness's label or designation as being an "owner," but rather because of the witness's firsthand knowledge of the company's financial status.  Id. at 272.  See Menici v. Orton Crane & Shovel Co., 285 Mass. 499, 503 (1934).

More recently, in Spinosa v. Tufts, 98 Mass. App. Ct. 1, 11-12 (2020), we addressed the admissibility of a business owner's opinion of the company's value offered to support the jury's award for breach of contract.  In that case, we held that opinion testimony of an owner of a small business was admissible

because the judge properly found that the owner was sufficiently aware of the business's contracts and its liabilities.  Id. at 11.

Here, viewing the facts in the light most favorable to HIT, as we must, Belogour's opinion testimony regarding Boston Merchant's ability to pay a judgment was sufficiently based on his personal knowledge and therefore admissible evidence. Belogour was the owner, founder, and manager of Boston Merchant, a high-risk, sophisticated foreign exchange trading company. Prior to founding Boston Merchant, Belogour was an experienced accountant and foreign exchange broker.  In addition to his role as a manager at Boston Merchant, and his prior experience and knowledge in finances, Belogour testified that his opinion was based on information from accountants, and although he no longer had spreadsheets in his possession, the spreadsheets were regularly prepared including profits and losses, which were available online for his review.

As to Belogour's own personal knowledge of the operations of Boston Merchant, he signed the 2010 and 2012 Agreements between the company and HIT, giving rise to a fair inference that he had personal knowledge of the inner workings and details of the company.  While he could not approximate the assets and liabilities of the company from 2013 through 2016, he testified

that his understanding of its ability to pay was based on consideration of assets and liabilities.

In short, HIT has provided admissible opinion testimony about Boston Merchant's ability to pay a judgment based on the deposition testimony of Belogour and as such the grant of summary judgment was error.[10]  While the evidence is admittedly thin, as noted in Shimer, 59 Mass. App. Ct. at 314, even thin evidence is sufficient to defeat summary judgment.  "A toehold, however, is enough to survive a motion for summary judgment."  Id., quoting Marr Equip. Corp. v. I.T.O. Corp. of New England, 14 Mass. App. Ct. 231, 235 (1982).  Here, HIT has produced such a toehold, which is sufficient to defeat summary judgment.  The separate and final judgment, dated June 13, 2023, is vacated, and the case is remanded to the Superior Court for proceedings consistent with this opinion.[11]

So ordered.

---

[10] We note that the factual background of this case is unique, and the decision is centered on the admissibility of testimony regarding collectibility.  The parties have not briefed, and we do not address, whether, despite what is stated in the 2010 and 2012 Agreements, Boston Merchant is otherwise legally precluded from returning funds to a company with ties to money laundering.

[11] The defendants' requests for appellate attorney's fees are denied.